**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Plantlogic LLC,

           Plaintiff,

v.

LGSA20 Incorporated, et al.,

           Defendants.

No. CV-23-00237-TUC-RCC

**ORDER**

      Before the Court is Defendant Oliver Davies' Motion for Summary Judgment ("MSJ") on the Merits (Doc. 33), Plaintiff Plantlogic, LLC's Counter-MSJ (Doc. 36) Davies' Motion Strike the Counter-MSJ (Doc. 39), Plantlogic's MSJ on Damages (Doc. 43) and Davies' Motion to Strike the MSJ on Damages (Doc. 45). In sum, the parties disagree whether Davies can be held personally liable for a contract entered into with Plantlogic. The Court finds there is a genuine issue of material fact as to Davies' liability preventing summary judgment.

## I.    FACTUAL SUMMARY

      On February 7, 2022, Plantlogic entered into an agreement ("instant contract") for the sale of pots and gutters in the amount of $241,022.50. Davies—founder, CEO, and president of LGSA20—approved the agreement. However, Plantlogic erroneously listed S&A Group Holdings USA—a business for which Davies had previously contracted—as the "Bill To" and "Ship To" entity on two invoices (but correctly listed LGSA20's Wilcox address). On February 9, 2022, Davies sent a 30% downpayment of $72,296.75.

He did not mention the error.

Prior to the contract, on September 22, 2021, Davies signed a non-disclosure agreement in anticipation of a "potential transaction." (Ex. 3 Doc. 35-1 at 15-16.) The agreement lists Davies as LGSA20's representative.

While negotiating the terms of the instant contract, email communications were sent to and from Davies' email: Oliver.Davies@TheBlossomFarm.com. The Blossom Farm is LGSA20's fictitious name. The emails refer to a previous contract ("first contract") that occurred "last year." The date of the first contract is disputed, the parties to the first contract are unstated, and there is no record of the previous transaction.

Plantlogic delivered the materials to the Wilcox facility around June 30, 2022, along with a "Factura de venta," again listing S&A as the billing and shipping entity. LGSA20 failed to pay the remaining balance of $168,725.75 and went out of business. Davies believes the pots and gutters were inside the Wilcox facility when LGSA20 and Davies' access to the facility was terminated.

On February 23, 2023, Plantlogic sent a demand letter requesting payment.[1] On February 27, 2023, Davies responded, for the first time indicating, "[Y]ou have the wrong business on your letter. We are The Blossom Farm not S&A Group Holdings. We have no relationship with S&A Group Holdings." (Doc. 44-1 at 58; Doc. 35-1 at 65.)

## II.    MOTIONS TO STRIKE

As a preliminary matter, the Court finds Plantlogic's Counter-MSJ is untimely. The parties proposed deadlines for dispositive motions on the merits and on damages but did not propose a deadline for cross motions. Therefore, the Court will deny the Counter-MSJ but will not strike it, as it is responsive to Davies' MSJ. *See McGowan v. Credit Mgt. LP*, No. 2:14-CV-00759-APG, 2015 WL 5682736, at *3 (D. Nev. Sept. 24, 2015) (denying a motion for summary judgment as untimely but declining to strike).

Next, Davies asks the Court to strike portions of Plantlogic's MSJ on Damages because it includes argument related to liability. The Court will not strike Plantlogic's

---

[1] The Court cannot locate the letter in the parties' attachments, but it is referenced in subsequent emails.

1    MSJ on Damages from the record but will only consider facts and argument related to the

2    issue of damages when deciding the motion.[2]

3    **III.    SUMMARY JUDGMENT STANDARD**

4          A court may grant summary judgment if the pleadings and supporting documents,

5    viewed in the light most favorable to the non–moving party "shows that there is no

6    genuine dispute as to any material fact and the movant is entitled to judgment as a matter

7    of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A

8    material fact is one "that might affect the outcome of the suit under the governing law."

9    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue arises when

10   the disputed material facts could reasonably be resolved in favor of either party. *Ellison v.*

11   *Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

12         If the moving party has established that there is no genuine issue of material fact,

13   then the non–movant must come forth with evidence that there is a genuine disputed

14   factual issue that may change the outcome of the lawsuit in the non–movant's favor.

15   *Anderson*, 477 U.S. at 248, 250; *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216,

16   1221 (9th Cir. 1995). This showing does not have to be unquestionable; however, the

17   non–movant "may not rest upon the mere allegations or denials of his pleading, but . . .

18   must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477

19   U.S. at 248; Fed. R. Civ. P. 56(e).

20   **IV.    DISCUSSION**

21         Plantlogic's Complaint raises three counts: (1) breach of contract, (2) breach of

22   covenant of good faith and fair dealing, and (3) quantum meruit. The Court addresses

23   each in turn.

24         *a.  Breach of Contract*

25         A breach of contract claim requires allegations "that (1) a contract existed, (2) it

26   was breached, and (3) the breach resulted in damages." *Steinberger v. McVey ex rel.*

27   *Cnty. of Maricopa*, 318 P.3d 419, 434 (Ariz. App. 2014). Under Arizona law, "[u]nless

28

---

[2] Contrary to the parties' assertions, the Court has not previously ruled on either motion.

otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." *Cahn v. Fisher*, 805 P.2d 1040, 1042 (Ariz. App. 1990) (quoting Restatement (Second) of Agency § 320). "The party seeking recovery on the contract has the burden of proving that the defendant was a party to that contract, but once this initial determination has been made, the burden shifts to the defendant, who in order to escape liability, must show that his promise was made solely in the capacity of agent for a disclosed principal." *Mahan v. First Nat. Bank of Ariz.*, 677 P.2d 301, 304 (Ariz. App. 1984); s*ee Myers-Leiber Sign Co. v. Weirich*, 410 P.2d 491, 493 (Ariz. App. 1966) ("Whether or not the fact of the [officer of the corporation] and the name of the [fictitious or corporate entity] were disclosed or known to the third-party so as to protect the [officer of the corporation] from personal liability on the transaction is essentially a question of fact which depends upon the circumstances surrounding the particular transaction.").

Davies can avoid personal liability if he can show that the instant contract was made solely in his capacity as a representative of LGSA20 d/b/a The Blossom Farm, and that he disclosed this agency relationship. However, the Court finds there is a genuine dispute as to whether Davies put Plantlogic on notice as to who he was representing.

It is undisputed that Davies previously contracted with Plantlogic as a representative of both S&A Group Holdings (an international produce company), Aisien (a Hong Kong based blueberry production company), and LGSA20 Inc. (a Wilcox, Arizona cannabis production company). And while Davies signed a non-disclosure agreement regarding "a potential transaction" as CEO of LGSA20, neither party has come forth with the finalized contract listing LGSA20 or The Blossom Farm as the purchaser. Instead, the parties have presented a series of emails that raise a genuine issue as to whether this "potential transaction" became an actual contract between Plantlogic and LGSA20 or Davies.

Likewise, the parties dispute whether LGSA20 made the downpayment or Davies paid personally. Neither party has come forth with evidence of this payment. Davies'

email correspondence indicates he approved the terms of the contract and states, "*I will get this paid this week.*" (Doc. 35-1 at 50 (emphasis added).) Davies uses both "I" and "we" interchangeably in his emails, but there is no explicit statement as to who he is representing.

In addition, Davies corresponded with Plantlogic from the email address Oliver.Davies@TheBlossomFarm.com, but this too is not determinative of the parties to the contract. There is no evidence that Davies exclusively emailed from this address when doing business for LGSA20 and not any other company. Moreover, there is no indication that Davies ever clarified that LGSA20 and The Blossom Farm were the same company. The emails do not explicitly indicate that Davies is representing either LGSA20 or The Blossom Farm. Without notice from Davies, Plantlogic argues it could not have known until the earliest June 13, 2022—the date the trade name The Blossom Farm was registered in Arizona—that it was contracting with LGSA20 d/b/a The Blossom Farm. Thus, there is a genuine issue as to whether Davies disclosed that he was representing The Blossom Farm for this transaction.

Furthermore, the invoices listed S&A as the "Bill to" and "Send to" entity. The parties conceded in oral argument that Davies had contracted with Plantlogic as a representative of S&A in the past. However, Davies had not worked with S&A for six years. There is no evidence that Plantlogic was aware of this fact. Davies did not correct the error until receiving a demand letter—over a year after entering into the contract and nearly eight months after delivery of the materials.

Finally, the emails are ambiguous as to whether Plantlogic knew it was contracting with The Blossom Farm in the first contract. The emails reference "[t]he machine [Plantlogic] sent last year" and indicate that a Plantlogic employee had been on site previously. (Doc. 35-1 at 52.) But, the location of the site is not part of the record, and the Court cannot presume it was the Wilcox location. In addition, there is no evidence— beyond dueling assertions—about when the first contract was formed and with whom. These ambiguities raise a genuine factual dispute as to whether the first contract formed

1    with Davies individually or with LGSA20 d/b/a The Blossom Farm, and whether the

2    instant contract was based on the understanding of who the parties were to the first

3    contract. As such, the Court cannot grant Davies' request for summary judgment on the

4    issue of liability.

5                    *b.  Breach of Covenant of Good Faith and Fair Dealing*

6          "Arizona law implies a covenant of good faith and fair dealing in every contract."

7    *Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 561 (Ariz. App. 1998) (citations omitted).

8    "The duty arises by virtue of a contractual relationship" and "the remedy for breach of

9    this implied covenant is ordinarily by action on the contract." *Beaudry v. Ins. Co. of the*

10   *W.*, 50 P.3d 836, 841–42 (Ariz. App. 2002), *as amended* (July 26, 2002) (citations

11   omitted). When a claim is based in contract principles, as opposed to tort, there is no

12   requirement to show a special relationship between parties. *Wells Fargo Bank v. Ariz.*

13   *Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz.

14   474, 491 (Ariz. 2002), *as corrected* (Apr. 9, 2002); *Sonoran Res., LLC v. Oroco Res.*

15   *Corp.*, No. CV-13-01266-PHX-JJT, 2015 WL 11089497, at * 7 (D. Ariz. Apr. 17, 2025)

16   (same) (citing *Firstar Metro. Bank & Trust v. Fed. Deposit Ins. Corp.*, 964 F. Supp.

17   1353, 1358 (D. Ariz. 1997).

18         Plantlogic argues Davies is liable for a breach of covenant of good faith and fair

19   dealing because of his contractual relationship to Plantlogic. Davies responds he cannot

20   be held liable because he owed no special duty to Plantlogic.

21         This claim may proceed because it is based on a contractual breach of contract, not

22   a tortious breach. Plantlogic seeks the remaining balance of the contract equaling

23   $168,725.75, interest pursuant to Arizona Revised Statute § 44-1201, and attorneys' fees

24   and costs. Additionally, as stated previously, there is a genuine issue of fact regarding

25   Davies' liability for the breach of contract claim, and so the Court will deny summary

26   judgment as to the contractual breach of the covenant of good faith and fair dealing.

27                    *c.  Quantum Meruit*

28         Quantum meruit is an equitable remedy available when a party can show unjust

enrichment. *W. Corr. Group, Inc. v. Tierney*, 96 P.3d 1070, 1077 (Ariz. App. 2004) (citation omitted). "Quantum meruit damages are available when services are performed under an unenforceable contract or when they are rendered in the absence of a contract." *Id.* (citing *Blue Ridge Sewer Improvement Dist. v. Lowry and Assocs., Inc.*, 718 P.2d 1026, 1028 (Ariz. 1986)). "To recover such damages, the party must prove that (1) the other party was unjustly enriched at the expense of the claimant, (2) the claimant rendered services that benefitted the other party, and (3) the claimant conferred this benefit under circumstances that would render inequitable the other party's retention of the benefit without payment." *Id.*

Davies claims he cannot be liable under Plantlogic's alternative theory of quantum meruit because he did not benefit from the transaction. The materials were delivered to LGSA20, and the company was locked out of the facility, along with the product. (Doc. 33 at 1–2.) Plantlogic counters that, as a 42.5% owner of LGSA20, 42.5% of the product delivered was Davies', therefore he benefitted from the transaction and the subsequent lockout is inconsequential.

The Court finds Davies benefitted from the delivery of the pots and gutters because he was part owner of LGSA20. Even though Davies lost access to the pots and gutters, this does not negate the fact that Plantlogic provided the product for LGSA20's use. It is enough that Davies received something of value. *See* Candace Saari Kovacic-Fleischer, *Quantum Meruit and the Restatement (Third) of Restitution and Unjust Enrichment*, 27 Rev. Litig. 127, 135 (2007) (Because "benefits that the recipient has requested are presumed to have value to the recipient at least equal to their market value . . . the restitutionary liability . . . is not reduced by a showing that the benefits in question were ultimately unprofitable to the recipient in a particular case."). Alternatively, if contracting in his personal capacity, he received the full benefit of the contract upon delivery. Because material issues of fact remain in dispute as to Davies' personal liability, summary judgment as to this claim is inappropriate.

///

### d. Statutory Liability

Plantlogic claims that Davies can be held individually liable because he contracted knowing LGSA20 was not permitted to do business in Arizona pursuant to Arizona Revised Statute ("A.R.S.") § 10-204. Davies asserts this statute only applies to "corporations," not "foreign corporations" and regardless, LGSA20 was incorporated in Delaware October 7, 2020, well before any contract.

Under A.R.S. § 10-204, "Any person purporting to act as or on behalf of a corporation that knew or should have known that *the corporation has not been formed under chapters 1 through 17* of this title is liable for all debts and liabilities incurred by the act." (emphasis added).

Davies is correct that "corporations" and "foreign corporations" are defined separately. *See* A.R.S. §§ 10-104(14), (26). But, Davies' analysis fails to account for the fact that foreign corporations are addressed in chapter 15, which falls under the chapters included in § 10-204. If the legislature intended § 10-204 not to apply to foreign corporations, it could have excluded chapter 15 from the statutory language.

Within chapter 15, a foreign corporation cannot "transact business in this state until it is granted authority to transact business in this state as provided in this chapter from the commission." A.R.S. § 10-1501. So, to do business in Arizona as a corporation "formed under chapters 1 through 17," a foreign corporation must file an application for authority with Arizona Corporation Commission.

Moreover, liability is applied equally to foreign corporations. Once a foreign corporation obtains authority to transact, it "is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on a domestic corporation of like character." A.R.S. § 10-1505(B). But even before a foreign corporation has authority to transact, it can be forced to litigate any violations. "[T]he failure of a foreign corporation to obtain authority to transact business in [Arizona] does not impair the validity of its corporate acts or *prevent it from defending any proceedings in this state*." A.R.S. § 10-1502(E) (emphasis added).

The Court finds that A.R.S. § 10-204 applies equally to foreign corporations. LGSA20 filed its application for authority on October 1, 2021. Therefore, prior to this date Davies, as President of LGSA20, should have known LGSA20 was not permitted to do business in Arizona, and could be held personally liable under A.R.S. § 10-204.

Plantlogic claims that the first contract occurred near July 2021, before LGSA20 received authority to do business. Davies claims it was between September 2021 and February 2022. Plantlogic argues Davies' attestation about the timing of the first contract is a sham given that Davies stated in deposition that he planted July 2021. However, Plantlogic has not presented any evidence of the first contract beyond vague references in the emails. Because there is a factual issue about the parties to the first contract, the timing, and Davies' disclosure of his representation of LGSA20, summary judgement is inappropriate.

Plantlogic's second statutory argument asserts Davies is personally liable because he knew that LGSA20 had not certified the fictitious name The Blossom Farm pursuant to A.R.S. § 44-1326, and failed to disclose that the contract was with The Blossom Farm. Davies claims even if the trade name was not registered at the time of contract, a violation of A.R.S. § 44-1326 does not impose personal liability.

A person doing business in Arizona under a fictitious name must either (1) file a document with the county recorder indicating the fictitious name and "the name and address of the corporation, signed by the statutory agent and acknowledged," A.R.S. § 44-1236(A)(2); (2) "[f]ile[] a trade name certificate with the secretary of state," *id.* § (E)(1); or (3) "[o]btain[] authorization from the corporation commission to conduct business as a foreign corporation using a particular name, *id.* § (E)(2). Failing to do so prevents a business from "maintain[ing] an action upon or on account of a contract or transaction made in the fictitious name in any court of this state." *Id.* § (D). A violation of § 44-1326 means a foreign corporation is conducting business is not registered with the state and without authorization by the corporation commission. And although a foreign corporation with an unrecorded fictitious name may not maintain an action in Arizona, it

is not prevented from defending against one.

The Court finds Davies may be held personally liable for doing business under the name The Blossom Farm. However, as noted previously, there is a factual issue as to whether Davies disclosed that he was representing LGSA20 d/b/a The Blossom Farm.

V.    *Motion for Summary Judgment on Damages*

Plantlogic seeks recovery of the remaining balance of $168,725.75, interest on $168,725.75 from February 7, 2022 to the date of judgment, at 1.5% per month (or the maximum rate allowed, pursuant to A.R.S. § 44-1201, and attorney's fees under A.R.S. § 12-341.01 and/or A.R.S. § 12-341. Davies argues he is not liable for anything personally but does not dispute the calculation. For this motion, the Court addresses damages only. Because there is no dispute as to the sum owed, the Court grants the Motion for Summary Judgment on Damages.

IT IS ORDERED:

1.) Defendant Oliver Davies' Motion for Summary Judgment on the Merits is DENIED. (Doc. 33.)

2.) Plaintiff Plantlogic, LLC's Counter-Motion for Summary Judgment is DENIED as untimely. (Doc. 36.)

3.) Defendant's Motion Strike the Counter-Motion for Summary Judgment is DENIED. (Doc. 39.)

4.)  Plaintiff's Motion for Summary Judgment on Damages is GRANTED. (Doc. 43.)

5.) Davies' Motion to Strike the Motion for Summary Judgment on Damages is GRANTED insofar as the Court has not considered liability when analyzing damages. (Doc. 45.) The Motion to Strike the Motion for Summary Judgment on Damages is DENIED insofar as the Court WILL NOT strike the Motion for Summary Judgment on Damages from the record.

6.) Pursuant to the Court's Scheduling Order,

a.  The Parties shall file a Joint Pretrial Order within 30 days from the filing of this Order;

b.  Motions in limine shall be filed no later than two weeks after the filing of the proposed Joint Pretrial Order. Responses to motions in limine are due ten days after the motion in limine is filed. No replies are permitted. Any hearing on motions in limine will be set at the Pretrial Conference;

c.  The Pretrial Conference will be set upon the filing of the proposed Pretrial Order, and the Trial Date in this matter will be set at the Pretrial Conference

Dated this 24th day of April, 2025.


_____

Honorable Raner C. Collins
Senior United States District Judge